UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COREY HARVEY,                                    Case No. 14-14949

              Plaintiff,                         Laurie J. Michelson
v.                                               United States District Judge

CAROLYN W. COLVIN,                               Michael J. Hluchaniuk
ACTING COMMISSIONER,                             United States Magistrate Judge
SOCIAL SECURITY ADMINISTRATION,

              Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 13 & 15)**

**I.  PROCEDURAL HISTORY**

       A.    Proceedings in this Court

       On December 31, 2014, plaintiff filed the instant suit seeking judicial

review of the Commissioner's decision disallowing benefits.  (Dkt. 1).  Pursuant to

28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Laurie J.

Michelson referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claims. (Dkt. 3). This matter is before

the Court on cross-motions for summary judgment. (Dkts. 13, 15).  The

cross-motions are now ready for report and recommendation.

1

B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claim for a period of disability and disability insurance benefits on August 23, 2012.  (Tr. 151-157).  The same day, plaintiff protectively filed a Title XVI application for supplemental security income.  (Tr. 158-163).  In both applications, plaintiff alleged a disability beginning January 1, 2010.  The Commissioner initially denied plaintiff's disability applications on November 12, 2012.  (Tr. 52-78).  Thereafter, plaintiff requested an administrative hearing, and on July 1, 2013, he appeared with counsel before Administrative Law Judge ("ALJ") Karen Sayon, who considered his case de novo.  (Tr. 24-51).  In a July 23, 2013 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 8-23).  The ALJ's decision became the final decision of the Commissioner on October 30, 2014, when the Social Security Administration's Appeals Council denied plaintiff's request for review.  (Tr. 1-6).  Plaintiff filed this suit on December 31, 2014.  (Dkt. 1).

For the reasons set forth below, the undersigned concludes that a remand is necessary to obtain a proper medical source opinion to support the ALJ's physical RFC.  The Court therefore **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Dkt. 13) be **GRANTED**, that Defendant's Motion for Summary Judgment (Dkt. 15) be **DENIED**, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be **REVERSED AND**

**REMANDED** for proceedings consistent with this Report and Recommendation.

## II.    FACTUAL BACKGROUND

A.    <u>ALJ's Findings</u>

Plaintiff had past relevant work as a warehouse worker and laborer. (Tr. 19). The vocational expert testified that the claimant, subject to the limitations identified in his RFC, could not perform his past work, which was classified as medium and unskilled. The ALJ agreed. (*Id.*) The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that between the alleged onset date (January 1, 2010) and the date of the decision, plaintiff did not engage in any substantial gainful activity. (Tr. 13). At step two, the ALJ found that plaintiff had the following severe impairment: multiple sclerosis. (*Id.*) At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled one of the listings in the regulations. (*Id.* at 14). The ALJ determined that plaintiff had the residual functional capacity (RFC) to perform:

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) involving: no climbing ladders, ropes, or scaffolding; occasional climbing ramps and stairs; no exposure to heights or hazards such as dangerous moving machinery like a forklift; no work on slippery or wet surfaces; the ability to use a cane while ambulating; and frequent, but not constant handling and fingering bilaterally.

(Tr. 14).  At step four, the ALJ determined that plaintiff was not capable of

performing any past relevant work. (Tr. 19).  At step five, the ALJ concluded that

based on plaintiff's age, education, work experience and RFC, there were jobs that

existed in significant numbers in the national economy that plaintiff could have

performed and, therefore, he was not under a disability at any time from the

alleged onset date through the date last insured. (*Id*.)

        B.    <u>Plaintiff's Claims of Error</u>

              1.    The ALJ failed to give the proper weight to the opinion of
                     plaintiff's treating physician.

Plaintiff argues that the ALJ erred when she failed to give substantial

deference to the opinion of plaintiff's treating physician, which was supported by

clinical diagnostic testing. (Dkt. 13, at 12-14).  Specifically, plaintiff argues that

his treating physician, Dr. Matthew Holtzman's opinion, supports the approval for

benefits on the basis of meeting Listing 11.09, and not having the RFC to maintain

full-time, competitive employment. (*Id*.)

Dr. Holtzman completed an RFC evaluation form on June 19, 2013, which

confirmed plaintiff's multiple sclerosis by both MRI and lumbar puncture. (Tr.

316).  Dr. Holtzman indicated that plaintiff had a mild dis-coordination of the

bilateral upper extremities with a lack of function in the left leg. (*Id*.)  He also

noted fatigue, balance problems, poor coordination weakness, unstable walking

and double/blurred vision.  (*Id*.)  The fatigue noted was lassitude, sitting was limited to two hours, and standing was limited to ten minutes.  (Tr. 317).  Dr. Holtzman also noted that plaintiff had severe limitations with fine manipulation and concluded that plaintiff had no ability to lift any weight in a competitive work environment.  (Tr. 318).

Plaintiff avers that Dr. Holtzman's opinions are objectively supported by MRI examination results which document "extensive demyelinating disease" involving the supratenorial brain, infratenorial brain, brain stem and cervical spinal cord in testing conducted at St. John Providence Hospital on August 12, 2012.  (Tr. 306-07).  Subsequent testing was also performed on August 13, 2012, which also supported a finding of multiple sclerosis.  (Tr. 308).

Plaintiff argues that this court has indicated a preference for the opinions of treating physicians over non-treating consultative physician examiners.  And, the case law indicates a duty on an ALJ to explain the rationale of accepting a non-treating consultative physician over a long-standing medical provider.  Plaintiff argues that Dr. Holtzman's medical opinions are a more accurate depiction of his physical abilities than those adopted by the ALJ.  Plaintiff points out that the SSA did not order a physical or psychiatric exam for plaintiff.  Further, plaintiff avers that his stated limitations appear to have been rejected based on a lack of treatment and recent his diagnosis.  Specifically, plaintiff points to record reviewing

5

physician, Dr. T.L. Tsai's statements that plaintiff was not eligible for disability insurance benefits based on his last date insured, although he was deemed to be unable to perform past relevant work. (Tr. 59). Also, Dr. Tsai indicated that plaintiff was ineligible for supplemental security income benefits noting that "the claimant was recently diagnosed with M.S. He reports the need to utilize an assistive device to walk. He has only mild functional limitation per the objective findings." (Tr. 64).

2.   The ALJ erred in discounting plaintiff's credibility.

Plaintiff also argues that the ALJ made an impermissible credibility finding in that his complaints of pain were consistent and medically supported by the objective evidence. (Dkt. 13, at 15-17). The ALJ indicated that plaintiff presented conflicting testimony regarding the use of a walker or cane, and discrepancies in the treating physician's statements and records are what detracted from plaintiff's credibility. Specifically, the ALJ noted that plaintiff went to a field office interview with a single leg cane. (Tr. 17). To this point, plaintiff argues that this same report indicates that he has problems standing and walking and that "about three times during the interview he laid his head down on the interview desk." (Tr. 172).

Plaintiff also contends that his Disability Report associated with his application reveals complaints consistent with his testimony and medical evidence.

6

For example, in written documentation submitted on November 11, 2012, plaintiff indicated that he had problems standing, walking, experienced headaches, and had trouble with balance. (Tr. 187). Plaintiff specifically indicated that he could only walk one-half of a block and he required a walker or cane. (Tr. 192, 193). He also indicated that he required more sleep than usual and fatigued a lot faster. (Tr. 188). He also reported poor memory and that he had a short attention span. (Tr. 189, 192). Plaintiff indicated that his multiple sclerosis prevented him from going out and affected lifting, squatting, bending, standing, reaching, walking, kneeling, talking, hearing, stair climbing, seeing, memory, completing tasks, concentration, understanding, following instructions, and using his hands. (Tr. 192).

Plaintiff is troubled that the ALJ never evaluated whether he was capable of full-time, competitive work as required by SSR 96-8p, or developed the record in a fair manner.

3. The ALJ erred in analyzing the applicability of Listing 11.09.

Plaintiff contends that the ALJ's brief statement concerning the application of Listing 11.09 does not meet the threshold required for explaining whether a claimant's impairment does not meet a listing. *Miller v. Comm'r of Soc. Sec.*, 181 F. Supp. 2d 816 (2001). Without a discussion of the elements of the listing, the court cannot properly review the ALJ's decision. Plaintiff argues that there are clear statements by Dr. Holtzman that bring Listing 11.09 into consideration.

7

Specifically, Dr. Holtzman indicated "significant and persistent disorganization or motor function in two extremities in sustained disturbance of gross and dexterous movement of gait or station." (Tr. 316). Plaintiff points out that Dr. Holtzman found impairments in three extremities (bilateral upper extremities and left lower extremity). (Tr. 316). The type of fatigue was also noted to be of a lassitude rather than motor function fatigue. (Tr. 317). Dr. Holtzman's report also indicated that plaintiff would be required to take unscheduled breaks of 20 minutes daily. (Tr. 318).

Plaintiff finally notes that multiple sclerosis is a disease that requires a longitudinal evaluation, which plaintiff argues the ALJ did not perform in this case.

### C.   The Commissioner's Motion for Summary Judgment

1.   Substantial evidence supports the ALJ's analysis at Step Three.

Plaintiff takes issue with the ALJ's listing analysis, arguing that the ALJ did not discuss the elements of the listing. However, the Commissioner argues that the ALJ conducted a thorough analysis and explained her determination that plaintiff's multiple sclerosis (MS) did not meet or equal Listing 11.09. On this point, the ALJ concluded:

> the evidence does not demonstrate disorganization of motor function, visual or mental impairments, as described under the criteria in 2.02, 2.03, 2.04, or 12.02.

8

> Additionally, the evidence does not illustrate significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system. Contrary to the report by treating physician, Michael Holtzman, M.D., that the claimant had significant and persistent disorganization of motor function, the objective evidence does not demonstrate this level of dysfunction. (Ex. 6F/2). Even Dr. Holtzman's notes in the same report indicate that the claimant had only mild dis-coordination in the upper extremity and the left leg. (*Id*. at pp. 2-3). While I acknowledge that the claimant ambulates with a cane, the treatment records showed that he was doing much better with medication (Ex. SF/2-3; 7F/6 & 8F/2) and is able to ambulate effectively.  For these reasons, the necessary requirements of listing 11.09 are not met or equaled.

(Tr. 14).  The Commissioner, thus, claims that plaintiff's argument that the ALJ did not sufficiently discuss the elements of Listing 11.09 is without merit.

The Commissioner further argues that plaintiff is unable to use the opinion of Dr. Holtzman to meet the requirements of Listing 11.09.  The Commissioner argues that Dr. Holtzman opined that plaintiff's MS satisfied part A of Listing 11.09 (Tr. 316), which requires a showing of MS with "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station."  20 C.F.R., Pt. 404, Subpt. P, App. 1, §§ 11.09A, 11.04B.  The Commissioner notes that the listings make clear that "the assessment of impairment depends on the degree of

9

interference with locomotion and/or interference with the use of fingers, hands, and arms." *Id.* at § 11.00C. Yet, as the ALJ stated, Dr. Holtzman's opinion belies his assertion that plaintiff's MS satisfied listing 11.09A. Indeed, Dr. Holtzman described plaintiff's degree of interference as "mild." (Tr. 316). Moreover, the ALJ noted that Dr. Holtzman's treatment notes did not suggest a "significant and persistent" level of impairment. (Tr. 14, 18). For example, only a few months before Dr. Holtzman completed his opinion, he indicated that plaintiff's strength, sensation, and coordination were all normal. (Tr. 313). In short, the Commissioner argues that the ALJ provided a detailed analysis of plaintiff's MS at the listing stage and reasonably determined that the impairment did not satisfy the listing.

## 2. Substantial evidence supports the RFC determination.

Concerning the medical opinion evidence, plaintiff first argues that the ALJ erred in discounting the opinion of his treating physician, Dr. Holtzman. Dr. Holtzman identified several functional limitations in the same form where he indicated that plaintiff met Listing 11.09A. Among them, Dr. Holtzman indicated that plaintiff could not carry or lift any amount of weight, could not walk even one city block, could stand only for ten minutes at a time and less than two hours total in a work-day, needed to alternate positions at will and take unscheduled work breaks. (Tr. 316-319). Plaintiff argues that Dr. Holtzman's opinion was supported

10

by his MRI, but the ALJ determined that Dr. Holtzman's opinion was inconsistent with other evidence in the record (Tr. 18). *See Bogle v. Sullivan*, 998 F.2d 342, 347-348 (6th Cir. 1993) ("This court has consistently stated that the Secretary is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence."). The Commissioner argues that plaintiff failed to discuss the reasons the ALJ provided for discounting Dr. Holtzman's opinion, rather plaintiff states only that Dr. Holtzman's opinion was a more accurate depiction of his physical abilities. The Commissioner contends that plaintiff must do more and show the prejudice that resulted.

Moreover, the Commissioner argues that the ALJ reasonably determined that Dr. Holtzman's opinion was unsupported by and inconsistent with the record. As previously mentioned, the ALJ reasonably concluded that Dr. Holtzman's opinion does not support a conclusion that plaintiff's MS meets Listing 11.09A. Also, Dr. Holtzman opined that plaintiff could not lift or carry any weight, yet the record establishes that plaintiff's arm strength was normal. (Tr. 18, 238, 283, 305, 313). Similarly, the ALJ noted that Dr. Holtzman concluded that plaintiff could not walk even one city block despite using a cane, yet plaintiff maintained mostly normal leg strength and statements in the record that plaintiff was doing "incredibly well" with treatment. (Tr. 18, 283, 305, 313, 328). For these reasons,

11

the Commissioner contends that Dr. Holtzman's opinion was unreliable.

The Commissioner is unclear regarding plaintiff's argument as it relates to the ALJ's weighing of the state agency physician's (Dr. Tsai) opinion. Dr. Tsai opined that plaintiff could perform light work, yet in an opinion more favorable to plaintiff, the ALJ concluded that he could only perform a limited range of sedentary work. (Tr. 14, 18). Plaintiff appears concerned that Dr. Tsai took into account plaintiff's lack of treatment to impugn his credibility, however, Agency policy expressly permits consideration of a claimant's lack of treatment. *See* Social Security Ruling (SSR) 96-7p, 1996 WL 374186, at *7 ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints"). The Commissioner also notes, however, that Dr. Tsai also relied on the objective evidence contained in the record which indicated only "mild functional limitations." (Tr. 56).

3.    Substantial evidence supports the ALJ's credibility assessment

The Commissioner contends that the ALJ identified several reasons that support its adverse credibility assessment. (Tr. 15-17). The ALJ considered plaintiff's lack of treatment during the earlier stages of the period at issue, the mild abnormalities that he exhibited on examination, the fact that his MS improved with treatment and his doctor stated that he was doing very well with medications, and his inconsistent statements regarding his use of an assistive walking device.

The Commissioner contends that plaintiff only seems to take issue with the ALJ's finding regarding his use of an assistive walking device.  On this point, the Commissioner argues that the ALJ reasonably determined that plaintiff's testimony that he had never left home without his walker was not entirely credible. (Tr. 17, 32).  As noted by the ALJ, plaintiff only used a single-leg cane during his initial disability interview.  (Tr. 172).  Also, Dr. Holtzman did not indicate in his notes that plaintiff used a walker.  (*See* Tr. 313-314, 328).  To the contrary, in October 2012, Dr. Holtzman stated that plaintiff required a cane (Tr. 314), and subsequently, in June 2013, he described plaintiff's gait as "normal."  (Tr. 328). As such, the Commissioner contends that plaintiff does not establish any error in the ALJ's credibility analysis and his argument should be rejected.

The Commissioner alternatively argues that even if the ALJ erred in his finding regarding plaintiff's use of an assistive device, substantial evidence still exists to support the ALJ's conclusion that plaintiff was not entirely credible.  *See Ulman*, 693 F.3d at 714 ("[s]o long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal.") (quoting *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).

13

D.    Plaintiff's Reply

Plaintiff contends that the opinion provided by Dr. Holtzman was not properly considered in violation of the treating source rule. (Dkt. 16). Plaintiff argues that Dr. Holtzman's opinion confirms a diagnosis of multiple sclerosis by both MRI and lumbar puncture. (Tr. 316). Dr. Holtzman states mild dis-coordination of the bilateral upper extremities with a lack of function in the left leg. (*Id*.) Fatigue, balance problems, poor coordination, weakness, unstable walking, and double/blurred vision are also indicated. (*Id*.) The fatigue noted was lassitude, sitting was limited to two hours, and standing to ten minutes. (Tr. 317). Dr. Holtzman also noted severe limitations in lifting and fine manipulation with no ability to lift any weight in a competitive work environment. (Tr. 318).

Plaintiff argues that Dr. Holtzman's opinions are supported by objective medical evidence–for example, MRI testing conducted on August 12, 2012, at St. John Providence Hospital, which documented "extensive demyelinating disease" and involved plaintiff's supratenorial brain, infratenorial brain, brain stem, and cervical spinal cord. (Tr. 306-307). Moreover, plaintiff identifies subsequent spinal cord testing that was performed on August 13, 2012, also indicating multiple sclerosis. (Tr. 308).

The Commissioner suggests that there are discrepancies between Dr. Holtzman's opinion and the support of his associated medical records, together

with a lack of treatment around the alleged onset date.  Plaintiff avers, however, that Dr. Holtzman's opinion is supported by the entire record including prison records from Nevada and the records highlighted above.  Multiple sclerosis is a disease that requires a longitudinal evaluation, which the ALJ failed to perform here.

Plaintiff also contends that the ALJ gave no valid reasons to discount his valid complaints of pain as stated in his Disability Report that were consistent with his testimony and the medical evidence.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

15

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters*, 127 F.3d at 528. In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir.2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions

among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir.2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir.1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are

18

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.

> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed

to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.     Analysis

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions."  SSR 06-3p, 2006 WL 2329939, at *2 (2006).  An opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source").  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (internal citations omitted).

Plaintiff claims that the ALJ erred when she failed to give substantial

21

deference to the opinion of his treating physician, Dr. Holtzman, who opined that

plaintiff was not capable of full-time competitive employment.  Specifically, in an

RFC questionnaire completed on June 19, 2013, Dr. Holtzman positively

diagnosed plaintiff with multiple sclerosis.  (Tr. 316).  Dr. Holtzman had made this

determination after MRI and lumbar puncture confirmation.  (*Id*.)  Dr. Holtzman

indicated that plaintiff was suffering with the following symptoms: fatigue,

balance problems, poor coordination, weakness, unstable walking, and

double/blurred vision.  (*Id*.) Dr. Holtzman affirmed a "significant and persistent

disorganization of motor function in two extremities resulting in disturbance of

gross and dexterous movement or gait and station."  When asked to specify the

degree of interference with locomotion and/or interference with the use of his

fingers, hands and arms, Dr. Holtzman indicated that plaintiff had "mild

discoordination" with the use of his upper extremities.  (Tr. 316).  Dr. Holtzman

also that plaintiff had a lack of function in his left leg.  (*Id*.)  Dr. Holtzman

indicated that plaintiff complained of fatigue best described as "lassitude" rather

than fatigue of motor function, which is typical of MS patients.  (Tr. 317).  Dr.

Holtzman indicated that plaintiff could not walk any city blocks without rest.

(*Id*.)  Dr. Holtzman also opined that plaintiff could sit for two hours before

needing to get up, and could stand for 10 minutes at one time before needing to sit

down, or walk around.  (*Id*.)  Dr. Holtzman opined that plaintiff could sit for six

22

hours and stand/walk less than two hours total in an eight-hour work day. (Tr. 317). Plaintiff would also require a job that allowed him to shift positions at-will from sitting, standing or walking. (*Id*.) Plaintiff would also require unscheduled breaks, and need 20 minute rest periods before returning to work. (Tr. 318). Plaintiff would also require an assistive device at work. (*Id*.) With respect to lifting, Dr. Holtzman indicated that plaintiff would not be able to do any lifting–even less than 10 pounds. (Tr. 318). Plaintiff could frequently twist, but should never stoop, crouch, or climb ladders or stairs. (*Id*.) Dr. Holtzman also noted that plaintiff had significant limitations in doing repetitive reaching, handling or fingering, noting that plaintiff could only use his hands, fingers, and arms 75% of the time for grasping, turning, and twisting objects, fine manipulations, and reaching (including overhead). (*Id*.) Dr. Holtzman also indicated that plaintiff should avoid all exposure to extreme heat. (*Id*.) Finally, Dr. Holtzman noted that plaintiff's impairments could result in his absence from work about one day per month. (*Id*.)

Despite these recommendations, the ALJ determined that plaintiff had the functional capacity to perform:

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) involving: no climbing ladders, ropes, or scaffolding; occasional climbing ramps and stairs; no exposure to heights or hazards such as dangerous moving machinery like a forklift; no work on slippery or

> wet surfaces; the ability to use a cane while ambulating;
> and frequent, but not constant handling and fingering
> bilaterally.

(Tr. 14).

Importantly, as noted above, in weighing the medical evidence, ALJs must

not succumb to the temptation to play doctor and make their own independent

medical findings. *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th

Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

Accordingly, an ALJ may not substitute his [or her] own medical judgment for that

of the treating physician where the opinion of the treating physician is supported

by the medical evidence. *Id.* (internal quotations omitted); *see also Bledsoe v.*

*Comm'r of Soc. Sec.*, 2011 WL 549861, at *7 (S.D. Ohio Feb. 8, 2011) (An ALJ is

not permitted to substitute her own medical judgment for that of a treating

physician and may not make her own independent medical findings.); *Mason v.*

*Comm'r of Soc. Sec.*, 2008 WL 1733181, at *13 (S.D. Ohio Apr. 14, 2008) (The

ALJ must not substitute his own judgment for a doctor's conclusion without

relying on other medical evidence or authority in the record.).  In other words,

[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to

choose between properly submitted medical opinions, the ALJ cannot substitute

his [or her] own lay medical opinion for that of a treating or examining doctor.

*Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio June 9, 2011),

24

adopted by 2011 WL 3566009 (S.D. Ohio Aug. 12, 2011).

Nevertheless, courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data. *See Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because [i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.), quoting *Deskin v. Comm'r Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)*; see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [RFC] determination.); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) (By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.).

Here, the ALJ discounted the opinion of plaintiff's treating physician because she concluded that Dr. Holtzman's RFC findings were "extreme" based on his treatment notes and plaintiff's positive responses to treatment.  (Tr. 18).

The ultimate RFC in this case discounted the recommendations of plaintiff's treating physician, however, the undersigned is not able to discern how the ALJ formulated her RFC recommendations. The ALJ does not indicate from what medical opinion(s) she draws the physical limitations that she incorporates into her RFC findings. She identifies state agency medical consultant Dr. Tsai's report, however, she ultimately discounts this report also because Dr. Tsai did not have the opportunity to review the medical records submitted after he rendered his opinion, including those of Dr. Holtzman. (Tr. 18). Because there does not appear to be a medical underpinning for the ALJ's RFC determination, and the ALJ essentially interprets the raw medical data in functional terms, the undersigned concludes under these circumstances that a remand is necessary to obtain a proper medical source opinion to support the ALJ's physical residual functional capacity finding. The undersigned also notes that the ALJ declined to adopt Dr. Holzman's opinion in a case where there does appear to be medical evidence that supports his opinion, including MRI and lumbar puncture diagnostic testing, which confirm the multiple sclerosis diagnosis and "extensive demyelinating disease," treatment notes that confirm plaintiff's self-reports of pain, weakness, and fatigue, and the use of prescription medications for pain and symptom management.

Although ultimately a finding of no disability is possible in this case,

substantial evidence does not exist on the record to support the current RFC determination.  As it stands, the ALJ's RFC determination (at least in part) was not based on any medical opinion but was apparently formulated based on her own independent medical findings. The undersigned also concludes that the ALJ did not give sufficient good reasons for rejecting the treating physician's opinion regarding plaintiff meeting a Listing. This too should be reassessed after the opinion of a medical advisor is obtained.

Given the above conclusions, the ALJ will have to re-assess plaintiff's credibility and additional vocational expert testimony may be required, depending on the conclusions the ALJ reaches on remand regarding plaintiff's RFC.  As such, the undersigned will not assess plaintiff's argument on this point now.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned concludes that a remand is necessary to obtain a proper medical source opinion to support the ALJ's physical RFC.  The Court therefore **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Dkt. 13) be **GRANTED**, that Defendant's Motion for Summary Judgment (Dkt. 15) be **DENIED**, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be **REVERSED AND REMANDED** for proceedings consistent with this Report and Recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: November 5, 2015                    s/Michael Hluchaniuk
                                          Michael Hluchaniuk
                                          United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on November 5, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                          s/Tammy Hallwood
                                          Case Manager
                                          (810) 341-7887
                                          tammy_hallwood@mied.uscourts.gov